AMOS GREEN *vs.* EBER WILBUR & others.

A citation from a poor debtor to his creditor, under Rev. Sts. *c.* 98, § 2, which recites that the debtor stands committed on an execution issued from a certain term of the court, is not fatally defective, although the commitment was in fact on an alias execution issued after said term, but founded on a judgment rendered at that term.

Nor is such citation invalid because interest on the judgment is not added to the original debt and costs, in stating the amount for which the debtor is committed.

It is not necessary that a jailer should discharge a poor debtor who has given bond for the prison limits under Rev. Sts. *c.* 91, and has been duly discharged within the ninety days, by two justices. Their certificate is the only authority necessary to his going at large.

DEBT on a bond for the liberty of the prison limits, under Rev. Sts. *c.* 97, § 63. The parties agreed upon the following facts :

The bond in suit was duly executed by the defendants. The principal obligor, Eber Wilbur, was on the twelfth day of February, 1851, committed to jail, on an alias execution which issued on the twenty-fifth day of January, 1851, upon a judgment recovered against him by the plaintiff for the sum of sixty-two dollars and sixty-five cents damages, and seven dollars and eighty cents costs of suit, at the court of common pleas, in said county, on the second Monday of Septem-

ber, 1850, on the fourteenth day of said month. The costs of commitment were four dollars and twenty-five cents.

The following citation was issued to the plaintiff, namely; " Bristol, ss. February 15, 1851. To Oliver Prescott, Esq. one of the justices of the peace within and for the said county of Bristol. Eber Wilbur, of Fall River, in said county of Bristol, laborer, who stands committed in our jail in New Bedford, in said county, on an execution issued from the court of common pleas, holden at Taunton, in and for said county of Bristol, on the second Monday of September last past, on a judgment recovered against him by Amos Green of Boston, in the county of Suffolk, trader, for the sum of seventy-five dollars and twenty cents, including debt and damages, costs of court, and further costs of commitment, represents to me, the subscriber, that he is unable to pay the debt for which he is imprisoned, and is desirous to take the benefit of the law for the relief of poor debtors; I therefore make the same known to you, in order that you may appoint a time and place for the examination of the said Eber Wilbur, and give notice thereof to the said creditor agreeably to law.

"JACOB L. PORTER, Jailer."

" Bristol, ss. To Amos Green, abovenamed, greeting: You are hereby notified, that Eber Wilbur mentioned in the above representation is desirous, in the suit described in said representation to take the oath prescribed for poor debtors, confined on execution, &c. O. Prescott, justice ol the peace."

No question was made about the remainder ol the citation, or the regularity of the subsequent proceedings. The creditor did not appear. The usual certificate was granted on the 22d February, 1851, and was afterwards delivered to the jailer, but at what time is not known, and he relying upon the bond in suit in this action, did nothing further in the matter.

The said Wilbur did not, after the giving of said bond, surrender himself at the jail-house named therein, for the purpose of being committed to close confinement upon the execution named in said bond, and has not since been in prison thereon.

Upon these facts, *Bishop*, J. gave judgment for the defend-ants, and the plaintiff appealed to this court.

*H. Battelle & E. Williams*, for the plaintiff.

*A. Mackie*, for the defendants.

METCALF, J.	The plaintiff denies that Wilbur has been lawfully discharged, within the condition of the bond given pursuant to the Rev. Sts. *c.* 97, § 63, and now in suit. It is objected, in the first place, that the citation, which was served on the plaintiff, was insufficient, because it did not correctly describe the execution on which Wilbur was committed. The citation referred to the accompanying representation made by Wilbur to the jailer, and by the jailer to the justice who issued it; and the execution was therein described as having issued from the court of common pleas held at Taunton, on the second Monday of September, 1850, when the judgment was rendered. In fact, the execution, which was an alias, issued on the 25th of January, 1851. It was, there-fore, not literally true that the execution issued from the court held in September; and very few executions do issue, while the court is in session. The description would have been just as objectionable as it now is, if it had issued on any day in September, after the court adjourned. But it is impossible that the plaintiff could have been misled, or could have been left in doubt as to the real judgment and execution. As was said by the court, in *Bussey* v. *Briggs*, 2 Met. 132, " undoubt-edly the creditor is entitled to the notice required by law; but a mere verbal variance, which could not mislead him, or create a doubt as to the object of the citation, ought not, we think, to vitiate the proceedings. Such great strictness is not re-quired to protect the interests of the creditor, and might fre-quently do great injustice to the debtor." See also *Leach* v. *Hill*, 3 Met. 173; *Osgood* v. *Hutchins*, 6 N. Hamp. 374.

It is further objected, that the citation did not correctly state the sum for which Wilbur stood committed. It appears from a copy of the execution and the return thereon, that the plaintiff recovered judgment for sixty-two dollars sixty-five cents damage, and seven dollars eighty cents, costs of suit; that the costs of commitment were four dollars twenty-five

cents; and that fifty cents were added, for the execution that had been first taken out, and for the alias. The aggregate of these sums was seventy-five dollars twenty cents, the exact amount for which the citation stated that Wilbur stood committed. But the plaintiff insists, that Wilbur stood committed for interest on the judgment, in addition to the damage and costs, because *St.* 1847, *c.* 153, provides that all judgments for the payment of money shall be on interest from the day when they are rendered, and that executions issuing on them shall command the officer to satisfy them in full, with interest thereon. And it is said, that one dollar seventy-four cents was the amount of interest that had accrued when the debtor was committed, and therefore the citation should have stated that he stood committed for seventy-six dollars ninety-four cents, instead of seventy-five dollars twenty cents. But the answer to the preceding objection is an answer to this. The plaintiff could not have doubted the identity of the judgment and execution on which his debtor stood committed. He knew that his judgment was on interest, and how much interest had accrued on it without being informed by the citation.

The remaining objection to the legality of Wilbur's discharge is, that the jailer did not discharge him. This objection is founded on the provisions of Rev. Sts. *c.* 98, § 10, 11. Section 10 requires that the justices, who administer the poor debtors' oath, shall make a certificate thereof, addressed to the jailer; and section 11 directs that "the jailer, upon receiving the said certificate, shall forthwith discharge the prisoner, so far as he is held in prison on the execution therein mentioned." The provision in *St.* 1787, *c.* 29, § 2, was, that the certificate of the justices being made to the jailer, he should "thereupon set the prisoner at liberty." The words of the two statutes are slightly different; but the meaning is the same. And it is manifest that, in the Revised Statutes, they apply to debtors in close custody; "held in prison;" of whom the jailer has the charge. This is further manifest from § 12 of *c.* 98, which directs that "if the justices," who by § 5, may examine the debtor at any place within the limits of the prison, "shall not

be satisfied that he is entitled to his discharge, he shall be re-manded to the prison." But the debtor, in the present case, was not held in prison, nor could the justices have remanded him to the prison. He was on the prison limits; having given the bond in suit, conditioned not to go out of those limits until he should be lawfully discharged, and to surrender himself to the jailer, to be held in close confinement, if he should not be lawfully discharged within ninety days from the day of his commitment. And the breach of this condition, which is alleged in the statement of facts, is, that he did not surrender himself to the jailer for the purpose of being committed to close confinement. The question therefore is, whether he was lawfully discharged within ninety days. And we have no doubt that he was. The certificate of the jus·tices, that they had administered the poor debtors' oath to him, was delivered to the jailer, "but he did nothing further in the matter." And there was nothing further for him to do. It does not appear whether the certificate was delivered to the jailer within ninety days; nor do we deem it material. We cannot suppose that the delivery of it to him, at any time, is a condition precedent to a debtor's discharge, even if he is in close confinement. Still less is it a condition precedent to the performance, by a debtor, of the condition of a bond given for the liberty of the prison limits. In *Kendrick* v. *Gregory*, 9 Greenl. 22, it was decided that the condition of such a bond is saved, if not previously broken, as soon as the debtor is lawfully admitted to the poor debtors' oath. This decision was made on a statute of Maine, of which the provisions, as to the oath of the debtor, and the certificate of the justices, were a transcript of our *St.* of 1787, *c.* 29, § 2, already mentioned, and the meaning of which, as we have before said, is the same as that of Rev. Sts. *c.* 98, § 10. The reasons given for that decision are entirely satisfactory. See also *Murray* v. *Neally*, 2 Fairf. 238.          *Judgment for the defendants.*